* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Chapman with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act, and are subject to the jurisdiction of the North Carolina Industrial Commission.
2. The plaintiff was employed by the defendant Bodford Construction, Inc. as a driver and general laborer for several years and his employment included the months of February through the end of May 2002.
3. Selective Insurance Company of South Carolina was the carrier on the risk from October 2001 through April 14, 2002.
4. Key Risk Insurance Company was the carrier on the risk from May 14, 2002 through May 14, 2003.
In addition, the parties stipulated into evidence the following:
1. Packet of documents which included Industrial Commission forms and filings, wage and employment records, medical records and reports, and discovery responses.
2. Wage voucher.
3. Physical therapy records.
4. Time sheets for plaintiff.
The Pre-Trial Agreement dated June 5, 2006, which was submitted by the parties, is incorporated by reference.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. Plaintiff began working for defendant-employer in approximately 1991 after he retired from his previous job. Defendant-employer performed demolition work and hauling. Plaintiff's job was dump truck driver and laborer; although he primarily drove a dump truck, he also performed demolition work and general labor when there were no loads for him to haul.
2. Defendant-employer's dump trucks had manual transmissions with thirteen gears, and some of the gears did not shift well. There was vibration in the gearshift lever in some of the trucks with shifting of gears and otherwise. Plaintiff tended to ride with his right hand resting on the gearshift knob. When driving in town, he had to shift gears a great deal.
3. By March 2002, plaintiff was experiencing some numbness in the fingers of his right hand, and on March 28 he went to Dr. Link about the symptoms. Dr. Link thought plaintiff might have carpal tunnel syndrome and ordered nerve conduction studies. He also referred plaintiff to Dr. Brown for a neurosurgical evaluation, but the appointment was not scheduled until June 12, 2002. In the meantime, plaintiff continued working in his regular job.
4. One of the projects the company was working on was the demolition of the Taylor Oil facility, located on the corner of Oakwood and Stratford Roads in Winston-Salem. The project was referred to as the Oakwood project. Plaintiff worked in all capacities on that project, driving as well as performing demolition work and other labor, during the months in question.
5. Although plaintiff sustained an injury by accident arising out of and in the course of his employment sometime in March or April 2002, the exact date of the injury cannot be determined from the evidence. This case was heard four years after the event occurred and the memories of the witnesses were no longer fresh. The primary significance of knowing the exact date of injury was to address the coverage issue, since the insurance coverage by Selective *Page 4 
Insurance Company ended April 14, 2004 and the coverage by Key Risk Insurance Company did not begin until May 14, 2004.
6. Nevertheless, it was clear from the evidence that plaintiff was at the Oakwood project with his truck close to the end of a work day in March or April 2002 when the supervisor, Gary Harbin, instructed him and two other employees to put some wrought iron railings into plaintiff's truck. Plaintiff was then to drive them to the shop and dump them there because the railings had salvage value. While lifting one end of a railing, plaintiff's foot slipped in gravel and something snapped in his right wrist. He immediately reported the injury to Mr. Harbin, who asked if he would be able to drive his truck back to the shop. Plaintiff thought that he could and he did manage to get the truck there. However, once there he was unable to pull the lever to dump the load. Consequently, he called Mr. Harbin on the radio to notify him and Mr. Harbin later dumped the load when he got to the shop.
7. Plaintiff thereby sustained an injury by accident arising out of and in the course of his employment with defendant-employer. The fact that his foot slipped as he was lifting the railing constituted an unusual occurrence which interrupted his regular work routine.
8. However, plaintiff did not prove that he sustained any compensable consequences as a result of the accident. None of the medical conditions with which he was subsequently diagnosed were proven to have been a proximate result of the accident.
9. On June 3, 2002 plaintiff went to Dr. Voulgaropoulos complaining of pain and swelling in his right hand which had been present for two days. He denied having had a spider bite or trauma. After examining him, Dr. Voulgaropoulos was of the impression that he had ascending lymphangitis and cellulitis. Plaintiff was given Unasyn intravenously as well as a prescription for Augmentin. Both medications were antibiotics. On June 6, plaintiff returned to *Page 5 
the doctor with worse symptoms in his hand despite the medication. He again denied having injured his hand at any time during the previous month, although he was noted to have had spontaneous swelling in February. His symptoms were severe enough that Dr. Voulgaropoulos advised him to see an orthopedic surgeon that day.
10. Plaintiff then decided to go the emergency room at Forsyth Memorial Hospital. His condition was diagnosed there as cellulitis and he was admitted to the hospital. Dr. Cregan, an orthopedic hand surgeon, assumed his care. The doctor's physician's assistant noted that plaintiff had gotten a small sliver of metal in his right hand ten days prior, that he thought he had gotten it out and that he had not thought it was related to his condition. At the time of his admission to the hospital, he had redness and swelling of his hand and seventy-five percent of his forearm.
11. Dr. Cregan treated plaintiff in the hospital with intravenous Unasyn, and the symptoms of infection subsided. The doctor then ordered occupational therapy, which continued after plaintiff's discharge from the hospital on June 11, 2006. Plaintiff also took oral antibiotics after being released from the hospital. When he next saw Dr. Cregan on June 19, 2002, his hand was better but it was stiff and he could not make a fist. Since that was the first office visit with Dr. Cregan, plaintiff was given an intake sheet to complete before the examination. Although the evidence did not disclose who actually wrote on the sheet, a history was noted of plaintiff having lifted heavy steel over his head, having slipped and having something in his wrist pop. The event was noted to have occurred in March or early April.
12. Dr. Cregan kept plaintiff on an antibiotic and had him continue occupational therapy for a period of time. Although plaintiff subsequently wanted to return to work, his grip strength was still so weak as of the July 29, 2002 follow-up visit that the doctor did not believe it *Page 6 
would be safe for him to be driving a truck. Plaintiff continued to experience weakness and limitation of motion in his hand such that he could not bring his fingertips to the palm of his hand. In September there was triggering present in three of his fingers. Dr. Cregan diagnosed him with flexor tenosynovitis and recommended surgery to release the affected tendons. The surgery was performed on December 17, 2002. Following the operation, the triggering was resolved but plaintiff continued to experience the preoperative weakness and limitation of motion. He underwent further occupational therapy to address those issues.
13. On March 18, 2003, Dr. Cregan determined that plaintiff would probably never be able to return to work as a truck driver due to persistent grip weakness. Plaintiff did not see the doctor again until May 7, 2004. At that time he was experiencing increased weakness in the hand and was waking in the night with numbness in the median nerve distribution. Dr. Cregan ordered nerve testing which proved to be essentially normal. It was his impression that plaintiff had borderline carpal tunnel syndrome but that the condition was not serious enough to warrant surgery. He injected the wrist and subsequently released plaintiff to return on an as-needed basis.
14. The condition which led to plaintiff's medical treatment and hospitalization in June 2002 was cellulitis. That condition arose either from a foreign body becoming embedded in the skin of his thumb or from the pocketknife he used to remove the metal sliver. Plaintiff really did not know precisely when he got the piece of metal in his thumb. He assumed that it happened at work and he related it to the incident where he lifted the railing. The initial medical records indicated that the incident lifting the railing occurred a couple of months earlier, which would be consistent with company records showing that the Taylor Oil building was demolished by April and that in May the work at that site primarily involved hauling dirt there to fill in the *Page 7 
hole where the basement had been located. Plaintiff denied having sustained a hand injury during the month prior to June 3, 2003, the date he first saw Dr. Voulgaropoulos. The popping incident when he lifted the railing was sufficiently dramatic that he would have remembered it had it just occurred and he would have told the doctor about it.
15. According to the testimony of Dr. Cregan, it would not be probable for plaintiff to develop cellulitis from an injury occurring two months earlier. The history of plaintiff getting a metal splinter in his thumb ten days before his appearance at the emergency room was much more consistent with the expected development of the condition.
16. Plaintiff did not prove that he got the metal splinter in his hand at work ten days before his hospitalization. Although he remembered getting one on the day he lifted the railing, that date was too remote for the splinter to have caused the cellulitis for which he was treated in June. The evidence did not establish what happened ten days before his hospitalization and was not sufficient to establish that he was injured at work. Consequently he did not prove that his cellulitis was due to an injury by accident arising out of and in the course of his employment with defendant-employer.
17. Plaintiff has also made a claim for carpal tunnel syndrome. He was evaluated regarding possible symptoms of that condition in 2002 by Dr. Brown and subsequently by Dr. Cregan. Although he was ultimately diagnosed with borderline carpal tunnel syndrome, the condition was not proven to have resulted from the accident involving lifting the railing. Furthermore, plaintiff was not demonstrated to have been placed at an increased risk of developing carpal tunnel syndrome by reason of his job duties as a truck driver as compared to the general public not so employed. Nor were his job duties proven to have been a significant contributing factor in the development of his carpal tunnel syndrome. *Page 8 
18. Plaintiff has not proven that he developed an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment and which was not an ordinary disease of life to which the general public was equally exposed.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On an unknown date in March or April 2002, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
2. The cellulitis for which plaintiff was treated beginning in June 2002 was not proven to have been a proximate result of the injury by accident occurring in March or April 2002 due to the period of time which elapsed before he developed symptoms of an infection. Nor was the borderline carpal tunnel syndrome with which he was later diagnosed proven to have resulted from the accident. Click v. Pilot FreightCarriers, Inc., 300 N.C. 164 (1980).
3. Since plaintiff did not receive medical treatment for the injury and did not sustain any disability as a result of the injury, he is not entitled to receive workers' compensation benefits for it. N.C. Gen. Stat. § 97-2 et seq.
4. Plaintiff did not prove that he sustained another injury by accident arising out of and in the course of his employment with defendant-employer on an unknown date during the last week of May 2002 which resulted in his getting a metal sliver in his hand. N.C. Gen. Stat. § 97-2(6). *Page 9 
5. Plaintiff is not entitled to benefits under the Workers' Compensation Act for his cellulitis. N.C. Gen. Stat. § 97-2 et seq.
6. Furthermore, plaintiff's borderline carpal tunnel syndrome was not an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed. N.C. Gen. Stat. § 97-53 (13); Booker v. DukeMedical Center, 297 N.C. 458 (1979).
7. Plaintiff is not entitled to benefits under the Workers' Compensation Act for his borderline carpal tunnel syndrome. N.C. Gen. Stat. § 97-2 et seq.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
This the 21st day of August, 2007.
S/______________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER
 S/______________________ PAMELA T. YOUNG CHAIR *Page 1